FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 09, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HELEN JEAN P., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 1:18-CV-03236-RHW <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are the parties' cross-motions for summary judgment. **ECF Nos. 13, 15**. Plaintiff brings this action seeking judicial review pursuant to 42 U.S.C. § 1383(c)(3) of the Commissioner of Social Security's final decision, which denied her application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §1381-1383F. *See* Administrative Record (AR) at 872-904. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 1

## I. Jurisdiction, Procedural History, and Relevant Sequential Evaluation Findings

This case has a lengthy history. Plaintiff applied for supplemental security income on December 18, 2009. AR 116-19. She alleged disability beginning on September 12, 2006.[1] AR 116. Plaintiff's application was initially denied on July 6, 2010, AR 78-81, and on reconsideration on September 24, 2010. AR 87-90. Plaintiff then requested a hearing with an Administrative Law Judge (ALJ). AR 91-93.

A hearing with an ALJ occurred on November 9, 2011. AR 41-75. On January 26, 2012, the ALJ issued a decision concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for supplemental security income. AR 17-40. The Appeals Council denied Plaintiff's request for review on January 30, 2013, AR 1-7, and Plaintiff filed a complaint in this district challenging the denial of benefits. AR 669-673; *see Helen P. v. Carolyn W. Colvin*, 2:13-CV-03034-FVS, ECF No. 5 (E.D. Wash. 2013).

In June 2014, the court issued a decision concluding that the ALJ's decision was not supported by substantial evidence and contained legal error. AR 677-693; *Helen P.*, 2014 WL 2452870, at *1. First, the court concluded that the ALJ failed to adequately develop the record for purposes of considering whether Plaintiff met

---

[1] However, for claims under Title XVI, benefits are not payable prior to the application's filing date. *See* 20 C.F.R. § 416.335.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 2

the criteria for Listing 12.05C, the listing for intellectual disability. AR 682-83. The court determined that remand was necessary to develop the record with respect to Plaintiff's special education background. AR 683. Next, the court concluded that the ALJ's reasons for discounting Plaintiff's credibility were inadequate and that remand was also necessary for the ALJ to reconsider his credibility finding. AR 683-89. Finally, the court concluded that the ALJ improperly rejected the opinion of Plaintiff's treating psychologist, Kirk D. Strosahl, Ph.D., and also failed to adequately discuss lay witness reports from Plaintiff's friend. AR 690-92. For these reasons, the court remanded the case so that the ALJ could develop the record regarding Plaintiff's educational history, reassess his step three finding, reconsider his credibility finding, and reweigh the medical opinion and lay witness evidence. AR 692.

Following the court's remand, a different ALJ held a hearing on May 26, 2015. AR 564-635. At the hearing, the ALJ called vocational expert Leta Berkshire as a witness. AR 623. Ms. Berkshire testified that employers would tolerate eight to ten absences per year, but qualified that those absences had to be spread out throughout the year and could not be clustered closely together. AR 626-27. Pursuant to the court's remand order, the ALJ also developed the record with respect to Plaintiff's educational history. AR 547, 800-810.

On July 2, 2015, the ALJ issued a second decision again finding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for supplemental security income. AR 539-557. The ALJ analyzed whether Plaintiff met the criteria for Listing 12.05C and concluded that she did not. AR 547-48. Next, the ALJ reconsidered the prior credibility finding and again determined that Plaintiff's subjective symptom complaints were overstated. AR 549. In making this determination, the ALJ reasoned that Plaintiff's testimony was inconsistent with her prior reports, conflicted with the medical evidence, and was belied by her daily activities. AR 549-553. Finally, the ALJ reweighed Dr. Strosahl's opinion and reconsidered the lay witness reports from Plaintiff's friend. AR 554-555.

Plaintiff again filed a complaint in this district challenging the denial of benefits. AR 950-58; *see Helen P. v. Carolyn W. Colvin*, 1:15-CV-03157-FVS, ECF No. 3 (E.D. Wash. 2015). The matter was referred to a U.S. Magistrate Judge. AR 959. Plaintiff moved for summary judgment challenging, among other things, the ALJ's step five finding. *Helen P.*, 1:15-CV-03157-FVS, ECF No. 17, at 21. Plaintiff noted Ms. Berkshire's testimony that missing nine days of work per year would be problematic if the days were clustered together, but would be permitted if they were separated throughout the year. *Id.* Plaintiff argued that the ALJ found that she would miss nine days of work per year, but failed to address the frequency or timing of these absences. *Id.* Given the possibility that these nine absences could

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

occur closely together, Plaintiff argued that it was unclear whether she could perform the jobs the ALJ cited at step five. *Id.* Plaintiff also argued that the ALJ again improperly discounted her subjective pain complaint testimony. *Id.* at 19-20.

The Commissioner agreed that the ALJ erred in failing to address whether Plaintiff's absences would be clustered together or spread out throughout the year. *Helen P.*, 1:15-CV-03157-FVS, ECF No. 24, at 2, 21. However, the Commissioner argued that the remainder of Plaintiff's contentions were without merit and asked the court to only remand for the limited purpose of resolving the ambiguity at step five. *Id.*

On November 22, 2016, the Magistrate issued a report and recommendation. AR 959-1010. The Magistrate agreed with the parties that remand was necessary to clarify whether the frequency of Plaintiff's absences would allow her to perform the jobs identified at step five. AR 967. The Magistrate rejected Plaintiff's remaining arguments, including her challenge to the ALJ's adverse credibility finding. AR 968-1008. Specifically, the Magistrate held that the ALJ reasonably interpreted the medical evidence and properly concluded that her physical and mental limitations were not as severe as she alleged. AR 981-83. The Magistrate also held that the ALJ properly relied on Plaintiff's daily activities as well as factual inconsistencies in her reports to find that her symptoms may have been overstated. AR 984-88.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

In light of these holdings, the Magistrate recommended that the case be remanded so the ALJ could reconsider his step five finding and ensure that the residual functional capacity allowed Plaintiff to perform other work. AR 1008. On December 19, 2017, the report and recommendation was adopted in its entirety and the case was remanded to the Commissioner for further proceedings. AR 1017-18.

Following the court's remand, Plaintiff provided the ALJ with a January 2015 psychological evaluation from Thomas Genthe, Ph.D., which was not previously part of the record. AR 891; *see* AR 1348-1356. The ALJ held another hearing on July 12, 2018. AR 907-924. At this hearing, the ALJ called vocational expert Mark Harrington. AR 917-923. The ALJ clarified that Plaintiff would be absent from work one and one-half days per month. AR 917. Mr. Harrington testified that based on Plaintiff's residual functional capacity, she could perform the jobs of table worker (30,000 jobs nationwide), touch up screener (40,000 jobs nationwide), and printed circuit layout taper (30,000 jobs nationwide). AR 918. Mr. Harrington testified that the U.S. Department of Labor does not publish job numbers for each individual occupation, but rather groups jobs into categories and then publishes numbers for each category. AR 921. He then testified that his job number estimates were "based on OES numbers" and that he used "Job Browser" to get the numbers for each individual occupation. AR 921.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

On October 18, 2018, the ALJ issued a third decision again finding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for supplemental security income. AR 872-895. The ALJ first noted that the court had upheld most of his prior decision—including his evaluation of Plaintiff's credibility—and that "[t]he only issue on remand [was his] prior step five finding." AR 875. The ALJ then adopted and incorporated his prior findings at steps one through four as well as his prior credibility determination. AR 877-891. The ALJ also considered Dr. Genthe's January 2015 evaluation, as this was not previously part of the record. AR 891-92.

Per the court's remand order, the ALJ then reconsidered his prior step five analysis. AR 893-95. Based on Mr. Harrington's testimony, the ALJ found that Plaintiff could perform the jobs of table worker, touch up screener, and printed circuit layout taper. AR 894.

Plaintiff did not file written exceptions nor did the Appeals Council opt to review the decision, so the ALJ's decision became administratively final once the period for review expired. AR 873; *see* 20 C.F.R. §§ 404.984, 416.1484. On December 19, 2018, Plaintiff timely filed the present action seeking judicial review of the Commissioner's final decision. ECF No. 1. Accordingly, Plaintiff's claims are properly before the Court pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g).

## II. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)).

## III. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was 39 years old on the date she filed her application, which the regulations define as a younger person. AR 123, 892; *see* 20 C.F.R. §§ 404.1563(c), 416.963(c). She graduated from high school with a "special diploma" and can read, write, and communicate in English. AR 127, 129, 810, 915-16. She has no past relevant work. AR 892.

## IV. Issues for Review

Plaintiff argues that: (1) substantial evidence does not support the ALJ's step five finding that other jobs existed in significant numbers in the national economy that she could perform, (2) the ALJ improperly discredited her subjective pain complaint testimony, (3) the ALJ improperly weighed Dr. Genthe's opinion, and (4) the ALJ erred by failing to reference or analyze the testimony of Leta

Berkshire—the prior vocational expert who testified at the May 2015 hearing—in his new decision. ECF No. 13 at 6-18.

V. Discussion

**A. Substantial Evidence Supports the ALJ's Step Five Finding that Other Jobs Existed in Significant Numbers in the National Economy that Plaintiff Could Perform**

Plaintiff first argues that the vocational expert's job number estimates were inaccurate because they were based on something called "OES groups"[2] rather than specific numbers for each individual occupation. ECF No. 13 at 6-11. Plaintiff states that she performed her own labor market research in Job Browser and that her search produced job number estimates that were significantly lower than the vocational expert's. ECF Nos. 13 at 9-10, 13-1 at 1-9.

In this case, the vocational expert, Mr. Harrington, testified that Plaintiff's residual functional capacity allowed her to perform the jobs of table worker, of which there are 30,000 jobs nationwide, touch up screener, of which there are 40,000 jobs nationwide, and printed circuit layout taper, of which there are 30,000 jobs nationwide. AR 918. Mr. Harrington agreed that the U.S. Department of Labor does not publish numbers for each individual occupation, but rather groups jobs into categories and then publishes numbers for each category. AR 921. He

---

[2] Plaintiff does not define or explain this term in any detail, but it is an acronym for "Occupational Employment Statistics." *See* Occupational Employment Statistics, U.S. BUREAU OF LABOR STATISTICS, https://www.bls.gov/oes/home.htm (last accessed March 8, 2020).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9**

then testified that his job number estimates were "based on OES numbers" and, importantly, that he used Job Browser "to get the numbers *for the individual occupations*." AR 921 (emphasis added). Plaintiff's counsel never cross-examined Mr. Harrington regarding the accuracy of those estimates, nor did counsel ever argue or suggest that the numbers were inaccurate either in his closing argument, in a post-hearing brief, or before the Appeals Council. *See* AR 923.

Plaintiff now argues that Mr. Harrington's job number estimates (30,000, 40,000, and 30,000 nationwide) were inaccurate because they reflected the numbers for entire job categories rather than the numbers for each individual occupation. ECF No. 13 at 8-9. However, Mr. Harrington testified that his estimates were only *based on* the OES numbers but that he used Job Browser to determine "the numbers for the individual occupations." AR 921. Thus, Plaintiff's suggestion that the job number estimates do not reflect each individual occupation is without merit.

Plaintiff also argues that she performed her own labor market research in Job Browser and that her search produced job number estimates that were significantly lower than the vocational expert's. ECF No. 13 at 9-10. However, submitting one's own research from Job Browser—evidence that is unauthenticated, unsworn, outside of the record, not subject to questioning, and unaccompanied by any analysis or explanation from a vocational expert to put the raw data into context—

is not a sufficient basis to undermine the reliability of a testifying vocational expert's opinion. *Martinez v. Colvin*, 2015 WL 4270021, at *9 (C.D. Cal. 2015); *Cardone v. Colvin*, 2014 WL 1516537, at *5 (C.D. Cal. 2014); *Vera v. Colvin*, 2013 WL 6144771, at *22 (C.D. Cal. 2013); *Solano v. Colvin*, 2013 WL 3776333, at *1 (C.D. Cal. 2013). In her reply brief, Plaintiff argues that claimants need to be able to question vocational experts' opinions in the event they contain "fundamentally inaccurate information." ECF No. 16 at 5. While true, Plaintiff did have this opportunity—counsel could have questioned Mr. Harrington about the accuracy of his estimates at the hearing, raised the issue in closing argument, filed a post-hearing brief, or filed written exceptions with the Appeals Council. What Plaintiff cannot do, however, is submit unauthenticated documents from outside the record for the first time on appeal to argue that the vocational expert's opinion was unreliable. *See Martinez*, 2015 WL 4270021, at *9.

**B.    This Court has Already Upheld the ALJ's Credibility Determination**

Plaintiff argues the ALJ erred by discounting her testimony regarding her subjective symptoms. ECF No. 13 at 11-14. Plaintiff made this same argument in her most recent appeal to this court. *See Helen P. v. Carolyn W. Colvin*, 1:15-CV-03157-FVS, ECF No. 17, at 19-20 (E.D. Wash. 2015). The Magistrate extensively analyzed the ALJ's credibility determination, *see* AR 979-988, and held that the ALJ properly relied on the medical evidence, Plaintiff's daily activities, and factual

inconsistencies in Plaintiff's reports to find that her symptoms may not have been as severe as alleged. AR 981-88. On remand, the ALJ acknowledged the court's holding and incorporated his prior credibility analysis into the new decision. AR 891. The Court declines to revisit its prior determination upholding this finding. *See Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016).

Plaintiff asks the Court to revisit its prior holding because the controlling law changed: SSR 96-7p (1996) was superseded by SSR 16-3p (2016) to clarify the use of the term "credibility." ECF No. 13 at 12. However, the purpose of the new ruling—as the ALJ acknowledged, AR 891—was to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16–3p (2016). It simply made "clear what [Ninth Circuit] precedent already required." *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017). It did not substantively change the controlling law and Plaintiff points to nothing in the changed policy that would alter this court's prior analysis.

Plaintiff also argues that the ALJ was required to revisit his prior credibility determination because he stated at the July 2018 hearing that he would hear "the matter de novo and . . . examine the facts and the law again." ECF No. 13 at 11; *see* AR 910. However, the ALJ did not mean that he would rehear the entire case and revisit his prior findings at every step of the sequential evaluation process. The parties had just discussed how the "case was remanded on a narrow [vocational]

issue" and in context, it appears the ALJ meant that he would reexamine the facts and the law on this discrete issue. AR 910.

Finally, Plaintiff argues that the ALJ should have revisited his prior credibility determination in light of the new medical records he obtained for the July 2018 hearing. ECF No. 13 at 12-13. However, the evaluations Plaintiff cites—Dr. William Drenguis's October 2016 evaluation and Dr. Alexander Patterson's September 2016 evaluation—were both done after the relevant period (December 2009 to March 2016) and thus do not relate to the period at issue in this case. *See* AR 1357, 1362. Plaintiff similarly argues that the Commissioner found her disabled as of April 2016 but again, that finding does not apply to the period at issue here.

### C. The Newly Obtained Opinion from Dr. Genthe is Consistent with the Residual Functional Capacity

Plaintiff argues that the ALJ erred in considering the January 2015 psychological evaluation from Thomas Genthe, Ph.D., which was not previously part of the record. ECF No. 13 at 14-16; *see* AR 891.

Dr. Genthe conducted a mental status examination and administered an IQ test. AR 1352-56. The mental status examination was essentially normal. AR 1352-53. The IQ test revealed verbal reasoning abilities in the "extremely low range," although Plaintiff's nonverbal reasoning abilities were "significantly higher." AR 1351. Dr. Genthe diagnosed Plaintiff with mild depressive disorder

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 13

and borderline intellectual functioning. AR 1350. He opined that Plaintiff's "depression does not cause clinically significant distress or impairment in functioning." AR 1348. With respect to Plaintiff's intellectual functioning, he generally opined that it either did not affect, mildly affected, or moderately affected her ability to perform various work activities. AR 1350-51. He did opine, though, that it markedly affected her ability to adapt to changes and follow detailed instructions. AR 1350. Nevertheless, Dr. Genthe stated that Plaintiff could likely perform simple, repetitive tasks in environments that did not have significant distractions or require cognitive flexibility ("i.e., entry-level labor positions"). AR 1351. He believed that Plaintiff's mental impairments would last "0 months" but that her intellectual impairments would last "[i]ndefinitely." AR 1351.

The ALJ found that Plaintiff's low intellectual functioning was one of her severe impairments. AR 877. However, the ALJ agreed with Dr. Genthe that Plaintiff was nevertheless able to perform unskilled, repetitive, and routine work. AR 883, 889. The ALJ outlined Dr. Genthe's opinion and found that it was consistent with the residual functional capacity. AR 891-92. But to the extent it conflicted with the residual functional capacity, the ALJ assigned it no weight because (1) Dr. Genthe indicated that Plaintiff's limitations would last for "0 months," (2) his mental status examination findings were normal, (3) Plaintiff herself stated that it was her physical impairments that prevented her from

working, not her mental ones, and (4) Dr. Genthe's opinion contained vague phrases like, "She *may* find it difficult to work independently." AR 892 (emphasis added).

Plaintiff argues the four reasons the ALJ gave for discounting Dr. Genthe's opinion were all improper. ECF No. 13 at 15-16. She argues that: (1) Dr. Genthe only believed her *psychological* impairments would last "0 months," but that her intellectual impairments would last indefinitely, (2) while her mental status examination findings may have been normal, her IQ test results were not, (3) her subjective self-assessment that her physical impairments were her primary barrier to employment is not reliable, and (4) Dr. Genthe's "vague phrases" were accompanied by a narrative description, a specific rating in each area of functioning, and test results. *Id.*

Plaintiff's arguments are well-taken. However, the ALJ did not actually reject any of Dr. Genthe's conclusions, given that his conclusions were adopted and incorporated into the residual functional capacity. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010). Accordingly, there was no conflict for the ALJ to resolve and therefore his analysis about what weight he would have given Dr. Genthe's opinion if it conflicted with the residual functional capacity was superfluous. *See id.* (upholding similar analysis in the alternative).

///

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 15

**D. The ALJ did not Err by Not Considering Leta Berkshire's Testimony in the New Decision**

Finally, Plaintiff argues that the ALJ erred by failing to reference or analyze the testimony of Leta Berkshire—the prior vocational expert who testified at the May 2015 hearing—in his new decision. ECF No. 13 at 17-18. Although Mark Harrington testified at the July 2018 hearing that Plaintiff could maintain competitive employment despite her absenteeism, Plaintiff argues that Ms. Berkshire's prior testimony from the May 2015 hearing supported an opposite conclusion and should have been considered. *Id.*

Plaintiff cites no legal authority for her argument that ALJs are required to consider vocational testimony from prior hearings. *See* ECF No. 13 at 17-18, No. 16 at 2-3. Instead, the opposite is true—"where an ALJ properly relies on the testimony of one vocational expert, 'he need not address the testimony of another VE.'" *Brando v. Colvin*, 2017 WL 2364194, at *23 (D.N.J. 2017); *see also Villa v. Astrue*, 2012 WL 2847730, at *3 (C.D. Cal. 2012), *aff'd sub nom. Villa v. Colvin*, 540 Fed. Appx. 639 (9th Cir. 2013); *Johnson v. Colvin*, 2015 WL 1954644, at *4 (W.D. Pa. 2015) ("As a general matter, the ALJ properly relied on the vocational expert's testimony from the Second Hearing, and was not required to address the vocational expert's testimony from the First Hearing."); *Ramirez v. Comm'r of Soc. Sec. Admin.*, 463 Fed. Appx. 640, 643 (9th Cir. 2011) ("[D]espite the ALJ's lack of explanation for not relying on the testimony of the unavailable vocational

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 16

expert from the first hearing, the ALJ properly relied on the vocational expert's testimony at the second hearing."). Accordingly, the ALJ's "failure to address the testimony of the prior vocational expert[] is not a basis for remand or reversal." *Brando*, 2017 WL 2364194, at *23.

## VI.  Order

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.
2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.
3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and **close the file**.

**DATED** this March 9, 2020.

<u>*s/Robert H. Whaley*</u>
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 17